IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONESTOGA TRUST, formerly known as CONESTOGA SETTLEMENT TRUST and CONESTOGA TRUST SERVICES, LLC, as Trustee | § § § § § | **COMPLAINT** |
| Plaintiffs, | § § | |
| V. | § § | CASE NO.: _____ |
| LINCOLN NATIONAL CORP. and LINCOLN NATIONAL LIFE INSURANCE COMPANY, | § § § § § | **JURY TRIAL DEMANDED** |
| Defendants | § | |

Plaintiffs Conestoga Trust, formerly known as the Conestoga Settlement Trust, and Conestoga Trust Services, LLC, as trustee and on behalf of Conestoga Trust ("Plaintiffs") file this Complaint against Defendants Lincoln National Corp. and Lincoln National Life Insurance Company (collectively, "Lincoln") and would respectfully show this Court as follows:

## NATURE OF THE ACTION

1. Conestoga Trust, in its own right and/or through its trustee Conestoga Trust Services, LLC, is the owner of a portfolio of life insurance policies including a certain JPF Legend 300 universal life insurance policy insuring the life of Susan Foreman (the "Foreman Policy"). The Foreman Policy was originally issued by Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot"), which was later acquired by Lincoln.

2.      In 2016, Defendants drastically increased the cost of insurance rate on the Foreman Policy by approximately 99%.  For the reasons described herein, Defendants' impermissible cost of insurance rate increases constitute a breach of the Foreman Policy and the implied covenant of good faith and fair dealing and have damaged Plaintiffs in an amount to be proven at trial.  Plaintiffs bring this action seeking compensatory and punitive damages, equitable relief, and attorneys' fees for Defendants' unlawful conduct.

3.      Prior to filing this Original Complaint, Plaintiffs learned that there are multiple other lawsuits pending in this Court against Defendants complaining of the same misconduct with respect to other JPF Legend 300 and 400 universal life insurance policies.  Those cases include:  a certain class action complaint styled *Bharwani and Zirinsky v. Lincoln National Corp. and Lincoln National Life Insurance Company*, Case No. 2:16-cv-06605-GJP (referred to as the: "*In re: Lincoln National COI Litigation*"), and *EFG Bank AG, Cayman Branch, et al. v. The Lincoln National Life Insurance Company*, 2:17-cv-02592-GP, and other cases that appear to have been consolidated into the *In re: Lincoln National COI Litigation* class action.

4.      On or about November 20, 2017, the Court entered an order *In re: Lincoln National COI Litigation* and *EFG Bank AG* lawsuits partially consolidating and coordinating the cases for purposes of discovery.  *See In re: Lincoln National COI Litigation*, No. 2:17-cv-066055-GJP, Order (E.D. Pa. Nov. 20, 2017) [ECF No. 35].  As Plaintiffs' claims in this action involve the same wrongful conduct as the misconduct complained of in the *In re: Lincoln National COI Litigation* and *EFG Bank AG* lawsuits, Plaintiffs seek to relate and coordinate this action—similar to the Court's processes with the *EFG Bank AG* action—with the *In re: Lincoln National COI Litigation* in accordance with the Court's prior November 20, 2017 Order.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) and (3) because (a) the action involves plaintiffs who are citizens of Georgia (as described below), and defendants that are citizens of the States of Indiana and Pennsylvania; and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Lincoln because Lincoln's principal place of business is in Radnor, Pennsylvania and Lincoln regularly conducts and transacts business in Pennsylvania.

7. Venue is proper pursuant to 28 U.S.C. § 1391(a)(l) because Lincoln resides in the Eastern District of Pennsylvania.

## THE PARTIES

8. Plaintiff, Conestoga Trust, formerly known as the Conestoga Settlement Trust,[1] is a trust organized and existing under the laws of the State of Delaware. Conestoga Trust holds a portfolio of life insurance policies for the benefit of its Participants[2] in such policies, making claims for the death benefits payable under such policies upon the death of the insureds under such policies, receiving the proceeds from such death benefits, and directing the distribution of the proceeds to the Participants according to their fixed percentages in the policies. The trustee of Conestoga Trust is Conestoga Trust Services, LLC. Conestoga Trust's principal place of business is in Atlanta, Fulton County, Georgia. For the purpose of determining the Court's diversity jurisdiction, Conestoga Trust is a citizen of the State of Georgia as its trustee (Conestoga Trust Services, LLC) is a citizen of the State of Georgia.

---

[1] Pursuant to a name change only, Conestoga Settlement Trust is now known as Conestoga Trust.
[2] The Participants are all "Accredited Investors," as that term is defined under the Securities Act of 1933.

9. Plaintiff, Conestoga Trust Services, LLC, is the trustee for Conestoga Trust and has the legal right to pursue this lawsuit as such. Conestoga Trust Services, LLC is organized and existing under the laws of the State of Delaware. Conestoga Trust Services, LLC's principal place of business is in Atlanta, Fulton County, Georgia. For the purpose of determining the Court's diversity jurisdiction, a limited liability company is a citizen of the state(s) in which its member(s) are citizens. Conestoga Trust Services, LLC is a citizen of the State of Georgia because it is owned by a single member that is a citizen of the State of Georgia. Conestoga Trust Services, LLC brings this lawsuit in its capacity as trustee of Conestoga Trust.

10. Defendant Lincoln National Corp. ("LNC") is a corporation organized under the laws of the State of Indiana. LNC's home office and principal place of business are both at 150 North Radnor-Chester Rd., Radnor, Pennsylvania 19087. LNC acquired Jefferson Pilot Life Insurance Company, which is the entity that originally issued the Foreman Policy, for approximately $7.5 billion in combined cash and stock consideration through a 2006 merger transaction.

11. LNC is the parent of its wholly-owned subsidiary, Defendant Lincoln National Life Insurance Company ("LNLIC"). Lincoln Financial Group is the marketing name for Lincoln National Corp. and its affiliates. LNLIC is a life insurance company organized under the laws of the state of Indiana, with its principal place of business in Fort Wayne, Indiana. LNLIC's principal individual life insurance operations are located in Greensboro, NC. As a result of the merger of LNC and Jefferson-Pilot in 2006, all of Jefferson Pilots' insurance policies, including the Foreman Policy, were absorbed, owned and controlled by the combined company.

**FACTUAL BACKGROUND**

12. On or about March 8, 2002, Jefferson Pilot Life Insurance Company issued Policy No. JG5231611; the insured under such policy was Susan Foreman, who was and remains a

resident of California at all relevant times (the previously defined "Foreman Policy"). Accordingly, the Foreman Policy was delivered in California. The face amount of the Foreman Policy is $3,000,000. A true and correct copy of the Foreman Policy is attached hereto as Exhibit "A" and incorporated herein.[3]

13. Subsequently, the Conestoga Trust, then known as the Conestoga Settlement Trust, acquired ownership of the Foreman Policy and continued to pay the premiums thereunder and otherwise continued to tender performance under the policy.

14. As is typical of universal life insurance policies, the Foreman Policy provides that it will remain in force as long as there are sufficient funds in the policy account each month to cover the monthly policy charges. The monthly charges include a premium charge, an administrative charge, a cost of insurance charge, plus additional charges for any policy riders. Any balance in the policy account that is left after the monthly charges are deducted is the "Policy Value" amount, which according to the terms of the Foreman Policy accrues interest at a rate that cannot be lower than the "guaranteed interest rate." Foreman Policy at 8.

15. In the event the Policy Value balance is not sufficient to cover monthly policy charges, the policy enters a 60-day grace period giving the policy holder the opportunity to pay in additional premiums. If additional premiums are not paid, Lincoln will terminate the policy. *Id.* at 7.

16. The Foreman Policy's most significant monthly charge is the cost of insurance charge. This charge, upon information and belief, reflects the price that Lincoln charges to cover the risk of the insured's death. The cost of insurance charge or ("COI Charge") is determined by

---

[3] Certain personal information of Susan Foreman has been redacted from Exhibit A to preserve her privacy. These personal details are not relevant to this case.

**COMPLAINT—PAGE 5**

multiplying the cost of insurance rate times the net amount at risk. The net amount at risk is the death benefit minus the Policy Value. The Policy Value, as described above, is deducted from the death benefit because, although the Policy Value is part of the death benefit paid upon the insured's death, policyholders do not pay cost of insurance on the residual Policy Value, as that is the savings component of the policy and not the insurance product portion of the policy.

17. The cost of insurance rates under a policy are based initially on certain characteristics of the insured, including her or his gender, age, and underwriting class (*i.e.*, preferred plus, preferred, standard, and substandard classes). The cost of insurance rate increases every year as the insured ages.

18. The Foreman Policy states that "the monthly cost of insurance rates are determined by [Lincoln]." Foreman Policy at 8. Specifically, the "Cost of Insurance Rates" term in the Foreman Policy states: "The monthly cost of insurance rates are determined by [Lincoln]. Rates will be based on our expectation of future mortality, interest, expenses, and lapses. Any change in the monthly cost of insurance rates used will be on a uniform basis for Insureds of the same rate class. . . ." *Id*.

19. Based on this plain language, under the terms of the Foreman Policy, any change in the COI rates: (a) can only be "based on [Lincoln's] expectation of future mortality, interest, expenses, and lapses"; and (b) must be "on a uniform basis for Insureds of the same rate class."

20. Starting in September 2016, Lincoln notified Plaintiffs that it was raising the cost of insurance rates on the Foreman Policy. Those increases then went into effect in November 2016. Upon information and belief, Defendants began raising the cost of insurance rates on many other then-in-force universal life insurance policies at that same time.

21. In its September 26, 2016, letter to Plaintiff (herein the "Notice Letter"), Lincoln stated that "your policy's cost of insurance (COI) rates will increase." A true and correct copy of the Notice Letter is attached hereto as Exhibit "B" and incorporated herein.[4] Lincoln went on to explain that the COI adjustment was necessary because "[w]e are operating in a challenging and changing environment as we continue to face nearly a decade of persistently low interest rates, including recent historic lows, and volatile financial markets." *Id*. Lincoln then states that it is "making fair and reasonable adjustments as necessary and appropriate to ensure we are providing value to our customers while operating responsibly for the long-term." *Id.*

22. Lincoln does not state in the letters how much the rate increase will be. *Id.* Instead in the "Frequently Asked Questions" enclosure, Lincoln states that the "amount of the COI rate change depends upon the product, underwriting class and duration." *Id*. at FAQ No. 3. Upon information and belief, other holders of in-force JPF Legend 300 and 400 series universal life insurance policies have seen COI rate increases from between 60% and 70%, with some 40% increases and one as high as 190%. The Foreman Policy COI rate increase was approximately 99%. Specifically, the monthly COI charge immediately preceding the COI rate increase was $12,236.09 and then rose to $24,336.77 the following month and has continued to increase by several hundred dollars each month thereafter.

23. In the FAQ enclosure, Lincoln also described its reason for changing COI rates: "Cost of insurance (COI) rates are based on certain cost factors, including mortality, interest, expenses and lapses. Our future expectations for these cost factors have changed; therefore policy COI rates have been adjusted to appropriately reflect those future expectations." *Id*. at FAQ No. 1.

---

[4] Certain personal information of Susan Foreman has been redacted from Exhibit B to preserve her privacy. These personal details are not relevant to this case.

**COMPLAINT—PAGE 7**

Responding to FAQ No. 2 asking whether COI rates were going up for all policies, Lincoln responded that: "All policyholders holding the impacted products will have some form of COI adjustment. While the majority of the rate changes are increases, some adjustments will be decreases, depending on future expectations of policy cost factors." *Id.* at FAQ No. 2.

24. In subsequent correspondence, dated April 28, 2017, Lincoln again made troubling statements that confirm Lincoln's COI Rate increases have not conformed to the terms of the Foreman Policy. A true and correct copy of the April 28, 2017 letter from Lincoln to Plaintiffs is attached hereto as Exhibit "C" and incorporated herein.[5] In contrast to the plain language of the Foreman Policy, which stated that COI Rates were "based on our expectation of future mortality, interest, expenses and lapses" and that "[a]ny change in the monthly cost of insurance rates used will be on a uniform basis for Insured of the same rate class" (*see* Foreman Policy at 8), the April 28, 2017 letter states that the COI Rates "charged are based on the policy year, the attained age of the insured, the insured's underwriting class and the amount at risk."

25. Separately, in public communications to its agents and brokers, Lincoln has stated that the COI rate increase was based on "material changes in future expectations of key cost factors associated with providing this coverage, including: [l]ower investment income as a result of continued low interest rates[;] [u]pdated mortality assumptions, including instances of both higher and lower expected mortality rates versus prior expectations[; and] [u]pdated expenses, including higher reinsurance rates." *See* Abbreviated Preview Edition of the Upcoming August 29, 2016, Lincoln Leader, Lincoln Financial Group, available at: http://lincolnfinancial. dmplocal.com/dsc/collateral/LincolnLifeLeader-LG ULCOI_- _No_watermark.pdf (1/7/17) at 4.

---

[5] Certain personal information of Susan Foreman has been redacted from Exhibit C to preserve her privacy. These personal details are not relevant to this case.

**COMPLAINT—PAGE 8**

26. Upon information and belief, in response to similarly situated policyholders' inquiries to Lincoln requesting additional information about the bases for the COI rate increase, Lincoln advised that "The policies' costs of insurance rates are based on certain cost factors including mortality, interest, expenses, and lapses. Lincoln's future expectations for these cost factors have changed." *See* EFG Bank AG Compl. ¶ 40 (citing Jan. 4, 2017 Ltr. from Lincoln). Also upon information and belief, in response to questions regarding how the duration of a policy impacts the COI rate and the amount of the rate increase, Lincoln responded that "[t]he amount of the COI rate change depends upon duration, as well as the product and underwriting class." *Id*.

27. Lincoln's statements regarding the COI rate increase make clear that its COI rate increases constitute breaches of the terms of the Foreman Policy in at least four ways. First, the COI rate increase is not "on a uniform basis for Insureds of the same rate class." Second, the COI rate increase is not "based on [Lincoln's] expectation of future mortality, interest, expenses, and lapses." Third, upon information and belief, and on that basis allege, that the COI rate increase is an impermissible attempt to circumvent the guaranteed interest rate provided under the Foreman Policy. Fourth, the COI rate increase breaches the implied covenant of good faith and fair dealing that exists in every insurance contract delivered in the State of California.

28. <u>*Lincoln's COI Rate Increases Were Not Applied Uniformly Applied.*</u>  Lincoln's COI rate increase violates the Foreman Policy provision that any rate increase be "on a uniform basis for Insureds of the same rate class" (*see* Foreman Policy at 8) because upon information and belief the COI rate increase was not uniform for insureds of the same rate class. As Lincoln admits in the Notice Letter's FAQ enclosure (Notice Ltr. FAQ No. 3) and in response to other policyholder inquiries (*see infra* ¶ 26), the COI rate increase depends not just on the insured's rate class but also on "duration." By basing the rate increase on more than just the insured's rate class, the rate

**COMPLAINT—PAGE 9**

increase is not "on a uniform basis for Insureds of the same rate class" as required by the terms of the Foreman Policy.

29. *Lincoln's COI Rate Increase Is Not Justified by Changes in Expectations as to Mortality and Interest*. The Foreman Policy states that Lincoln may base a change in cost of insurance rates only on "[Lincoln's] expectation of future mortality, interest, expenses, and lapses." Foreman Policy at 8. These are the only four factors that Lincoln may consider.

30. With respect to mortality, it is well known in the life insurance industry that over the past decade, mortality has improved, and that people are living longer than anticipated when Jefferson-Pilot originally priced the Foreman Policy—and other policies in its JPF Legend 300 and 400 series. For example, in 2015, just one year before Lincoln's rate increase, the National Center for Health Statistics reported "[s]ignificant decreases in mortality in 2014 compared with 2013" and observed that this year-to-year improvement was "consistent with long-term trends." The report went on to say that "[a]lthough year-to-year changes are usually relatively small, the age-adjusted death rate in the United States decreased 16.6% between 2000 (869.0) and 2014 (724.6)."

31. That there is a long-term trend of improved mortality is also evidenced by the release of several new mortality tables over the past two decades that would, if anything, support a decrease in cost of insurance rates, not increases as high as 190%. For example, in 2008, the Society of Actuaries ("SOA") released a 2008 Valuation Basic Table ("VBT") that reflected significant mortality improvements compared to prior tables, especially at older ages. In 2014, the SOA released the 2014 VBT, which showed overall mortality improvement from the 2008 VBT. And then in 2015, SOA issued a report showing significant reductions in insurance company reserves due to mortality improvements since 2001. These new mortality tables demonstrate that

since 2002 when the Foreman Policy was issued that mortality has improved, not worsened. Improvements in mortality would support a decrease—not an increase—in COI rates.

32. With respect to interest, according to Lincoln's public statements to its brokers and agents, Lincoln raised COI rates in part due to lower interest rates, which Lincoln claims have resulted in lower investment income to Lincoln.

33. While "interest" is listed as a permissible cost factor upon which a COI rate change can be based, the Foreman Policy requires that any change in cost of insurance rates be based on Lincoln's expectations for the future and not—as Lincoln appears to have done—be based on the past. Upon information and belief and upon Lincoln's own public statements, Plaintiffs allege that Lincoln's COI rate increase is impermissibly based on "a decade of persistently low interest rates, including recent historic lows, and volatile financial markets." This historic decline in interest rates—while no doubt challenges Lincoln's profitability—cannot be the basis for a change in COI rates because the Policies require that any change in cost of insurance rates be based on Lincoln's expectations for the future. Lincoln cannot raise COI rates to recover for past losses or shortfalls from years of low rates.

34. Moreover, even if lower interest rates may impact Lincoln's cost of providing insurance, low rates could not justify the approximately 99% COI Rate increase on the Foreman Policy because upon information and belief, interest rates should be a minor factor in calculating Lincoln's COI and COI rates. In 2002, when the Foreman Policy was issued, the Federal Funds interest rate was 1.75%. And while that rate since went as high as 5.25 in 2006, it now stands at 1.5%, which is only 25 basis point difference from the rate when the Foreman Policy was issued.

35. Universal life insurance policies—like the Foreman Policy—have two components: life insurance (the mortality component) and the accumulated Policy Value (the savings

component).  The Foreman Policy has a guaranteed 4% minimum interest rate for the Policy Value or savings component of the product.  In a climate of historically low interest rates, Lincoln undoubtedly is challenged to meet the 4% guaranteed return, let alone meet any profit spread it hoped to achieve.  However, increasing the COI Rate to cover all or a portion of the guaranteed return renders the guaranteed minimum interest rate meaningless.  Accordingly, any COI Rate increase due to interest rates must be limited to interest associated with the mortality component of the product.  There is simply no way that lower interest rates—or expectations of continued low rates—could necessitate a 99% COI Rate increase on the Foreman Policy.

36. Finally, even if Lincoln is only considering interest on the mortality component, to the extent Lincoln is raising cost of insurance rates to achieve its original profit expectations, the rate increase is improper because Lincoln cannot raise rates simply to guarantee itself its original profit expectations.

37. Given the magnitude of Lincoln's rate increase, upon information and belief, Lincoln has raised COI rates, not because its mortality and interest experience has been unfavorable enough to require an increase in COI rates, but solely to boost its profits.  Profit is not a factor that Lincoln can consider in changing COI rates. *See* Foreman Policy at 8.  Furthermore, using COI rates to guarantee Lincoln's original profit expectations or to improve those expectations, and thereby placing its interest in maximizing gains over the rights of policyholders, would constitute a breach of the implied covenant of good faith and fair dealing.

38. By drastically raising the COI Rate on the Foreman Policy, Lincoln apparently seeks to force Plaintiffs and other similarly situated policyholders to (a) pay exorbitant premiums that Lincoln knows would no longer justify the ultimate death benefit provided in the Foreman Policy or (b) allow the Foreman Policy to lapse, thereby forfeiting the premiums Plaintiffs have

paid since the Foreman Policy was issued. For its part, Lincoln will have made an unjust profit either through higher premium payments or reducing mortality expense where the policy lapses and Lincoln is entitled to keep the premiums paid to date.

39. *COI Rate Increase Is an Impermissible Attempt to Circumvent the Guaranteed Minimum Interest Rate*. The Foreman Policy provides that a policyholder has the right to pay just enough premiums to cover the monthly policy charges. *See* Foreman Policy at 8. If the policyholder contributes more than needed to cover the monthly charges, leaving a balance remaining in the policy account, the policy states that the balance will accrue interest at a rate no lower than the "guaranteed interest rate." *See* Foreman Policy at 8. The guaranteed interest rate provided for under the Foreman Policy is 4%.

40. Lincoln has stated that low interest rates, which presumptively may have reduced Lincoln's investment income, were at least one of the reasons for its COI Rate increase. To the extent Lincoln considered the interest it earns on funds in the Foreman Policy and/or the interest it in turn pays out on the Foreman Policy, the rate increase also violates the Foreman Policy's guaranteed minimum interest rate provision. Lincoln cannot contractually reduce the "guaranteed interest rate" on the Foreman Policy; instead, upon information and belief, Lincoln is trying to do indirectly what it cannot do directly: it is using the COI Rates to achieve an interest rate credited to Foreman Policy account that is lower than the guaranteed minimum interest rate provided for in the Foreman Policy. By depriving Plaintiffs of the right to the guaranteed interest rate, Lincoln has breached not only the express terms of the Foreman Policy, but also the implied covenant of good faith and fair dealing.

## CAUSES OF ACTION

### *COUNT I (Breach of Contract)*

41.     Plaintiffs reallege the allegations contained in paragraphs 1 through 40 inclusive, as if set forth fully herein.

42.     The Foreman Policy is a binding and enforceable contract.

43.     Defendants materially breached the Foreman Policy in several respects, including, but not limited to, the following:

> a. By increasing the COI Rates on a basis that is not uniform for insureds of the same rate class;
>
> b. By increasing the COI Rates on a basis other than Defendants' "expectation of future mortality, interest, expenses, and lapses;"
>
> c. By increasing the COI Rates in an attempt to circumvent the guaranteed minimum interest rate; and
>
> d. By imposing excessive cost of insurance rates.

44.     Plaintiffs have performed all of their obligations under the Foreman Policy.

45.     As a direct and proximate cause of Defendants' material breaches of the Foreman Policy, Plaintiffs have been damaged as alleged herein in an amount to be proven at trial, but in any event that exceeds $150,000, exclusive of interest.

### *COUNT II (Implied Covenant of Good Faith and Fair Dealing—Contractual Breach)*

46.     Plaintiffs reallege the allegations contained in paragraphs 1 through 45, inclusive, as if set forth fully herein.

47.     The Foreman Policy is a binding and enforceable contract.

48.     The Foreman Policy includes an implied covenant, actionable in contract, that Defendants will act in good faith and deal fairly with Plaintiffs, its policyholders.

49.     Defendants materially breached the Foreman Policy in several respects, including, but not limited to, the following:

    a. By charging an excessive COI Rate, thereby denying Plaintiffs the benefit of the anticipated value of the Foreman Policy;

    b. By considering interest that it earns on the Foreman Policy, as opposed to interest only from its mortality profits, in raising COI Rates;

    c. By increasing COI Rates in an attempt to achieve Lincoln's original expected profitability for the Foreman Policy at the Plaintiffs' expense;

    d. By increasing the COI Rates to circumvent the guaranteed minimum interest rate under the Foreman Policy;

    e. By attempting to force Plaintiffs either to (a) pay exorbitant premiums that Lincoln knows would no longer justify the ultimate death benefits available under the Foreman Policy or (b) lapse or surrender the Foreman Policy thereby forfeiting the premiums they have paid to date; and

    f. By failing to provide meaningful disclosures about the COI Rate increase.

50. Plaintiffs have performed all of their obligations under the Foreman Policy.

51. Defendants' breaches were conscious, deliberate, and unreasonable acts, which were designed to and which did unfairly frustrate the agreed common purposes of the Foreman Policy and which disappointed Plaintiffs' reasonable expectations by denying Plaintiffs the benefits of the Foreman Policy.

52. As a direct and proximate cause of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged as alleged herein in an amount to be proven at trial, but in any event that exceeds $150,000, exclusive of interest. Furthermore, Lincoln's conduct was conscious and deliberate, and constitutes oppression, fraud, or malice, justifying an award of punitive damages.

### COUNT III (Implied Covenant of Good Faith and Fair Dealing—Tortious Breach)

53. Plaintiffs reallege the allegations contained in paragraphs 1 through 52, inclusive, as if set forth fully herein.

54. The Foreman Policy is a binding and enforceable contract.

55. The Foreman Policy includes an implied covenant, actionable in tort, that Defendants will act in good faith and deal fairly with Plaintiffs, its policyholders.

56. Defendants materially breached the Foreman Policy in several respects, including, but not limited to, the following:

    a. By charging an excessive COI Rate, thereby denying Plaintiffs the benefit of the anticipated value of the Foreman Policy;

    b. By considering interest that it earns on the Foreman Policy, as opposed to interest only from its mortality profits, in raising COI Rates;

    c. By increasing COI Rates in an attempt to achieve Lincoln's original expected profitability for the Foreman Policy at the Plaintiffs' expense;

    d. By increasing the COI Rates to circumvent the guaranteed minimum interest rate under the Foreman Policy;

    e. By attempting to force Plaintiffs either to (a) pay exorbitant premiums that Lincoln knows would no longer justify the ultimate death benefits available under the Foreman Policy or (b) lapse or surrender the Foreman Policy thereby forfeiting the premiums they have paid to date; and

    f. By failing to provide meaningful disclosures about the COI Rate increase.

57. Plaintiffs have performed all of their obligations under the Foreman Policy.

58. Defendants' breaches were conscious and deliberate acts, which were designed to and which did unfairly frustrate the agreed common purposes of the Foreman Policy and which disappointed Plaintiffs' reasonable expectations and disregarded Plaintiffs' rights by denying Plaintiffs the benefits of the Foreman Policy.

59. As a direct and proximate cause of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged as alleged herein in an amount to be proven at trial, but in any event that exceeds $150,000, exclusive of interest.  Furthermore,

Lincoln's conduct was conscious and deliberate, and constitutes oppression, fraud, or malice, justifying an award of punitive damages.

### *COUNT IV (Injunctive Relief as to COI Increases)*

60. Plaintiffs reallege the allegations contained in paragraphs 1 through 59, inclusive, as if set forth fully herein.

61. Defendants engaged in the following practices, among others:

    a. Imposing the COI increase even though Defendants' expected future mortality exposure has improved and is better than the mortality upon which the original COI rate schedule is based – in order to increase premiums, recoup past losses, or force Plaintiffs to surrender the Foreman Policy, all of which is designed to enhance Defendants' profit margin contrary to, and precluded by, the express terms of the Foreman Policy.

    b. After the sale of the Foreman Policy, sending annual reports, policy servicing statements, illustrations and other documents and correspondence to Ms. Foreman and then to Plaintiffs without disclosing that there would be sudden, dramatic, and cost-prohibitive increases in the COI amount in October 2016.

    c. Failing to provide any meaningful advance warning that they intended to massively and suddenly increase the COI amount commencing in September 2016 and/or effective October 2016.

    d. Ultimately providing a false and misleading explanation to Plaintiffs of the grounds for the COI charge increase.

62. Accordingly, Plaintiffs respectfully request that the Court issue an injunction against Defendants preliminarily and permanently enjoining them from continuing to engage in the unlawful and unfair conduct and preventing Defendants from collecting the unlawfully and unfairly increased COI amounts in violation of the Foreman Policy from Plaintiffs.

63. Plaintiffs further respectfully request that this Court order restitution to be paid by Defendants to Plaintiffs for the increased COI charges, the amount of the increased premiums paid, and any other amounts wrongfully required, obtained and collected as the result of the COI increase in violation of the Foreman Policy.

64. Plaintiffs also respectfully request an award of attorney fees as the prevailing party in this request for injunctive relief and restitutionary relief against Defendants.

### COUNT V (Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code 17200 et seq.)

65. Plaintiffs reallege the allegations contained in paragraphs 1 through 64, inclusive, as if set forth fully herein.

66. Defendants committed acts of unfair competition in violation of California Business and Professional Code §§ 17200 *et seq*.

67. Per the Foreman Policy's language, Defendants offered flexible premiums that would allow a policyholder to fund only enough premiums to cover the monthly deductions, that Lincoln would not raise the COI Rate and consequent Monthly Deduction except based on certain anticipated future expense factors stated in the Foreman Policy and as, acknowledged by its NAIC filings, would not raise the cost of insurance in order to recoup past losses. Defendants made those representations in the Foreman Policy, on its website, its marketing materials and press releases, and its interrogatory responses in Lincoln's 2015 Annual Statement to the NAIC.

68. Defendants have willfully violated Section 17200 *et seq.* by increasing COI Rates in order to recoup past losses despite assurances and representations that it would not do so, and doing so as part of an unfair and deceptive scheme designed to force policy lapses by virtue of burdensome premium increases.

69. This conduct is likely to mislead and has misled reasonable consumers acting reasonably under the circumstances. For example, reasonable consumers expect that when they purchase flexible-premium universal life insurance, they need only pay the minimum premiums required to cover the COI charges and standard expense charges. No reasonable consumer would expect that Defendants would punish consumers for doing exactly that, force them to increase their

policy values upon threat of massive COI increases, and thereby effectively convert their flexible-premium policies into fixed-premium policies, or otherwise force them to let their policies lapse in the fact of such premium adjustments.

70. Defendants' conduct is consumer-oriented and upon information and belief is of a recurring nature. Lincoln, and its predecessor Jefferson-Pilot, marketed and sold policies—like the Foreman Policy—to the public at large in California pursuant to form insurance policies that are contracts of adhesion.

71. As a direct proximate cause of violation of Section 17200 *et seq.*, Plaintiffs have been damaged as alleged herein in an amount to be proven at trial.

72. Plaintiffs seek monetary damages and injunctive relief, as well as costs and reasonable attorneys' fees as authorized by Section 17200 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief and judgment against Defendants as follows:

a. For compensatory damages in an amount to be determined at trial (all Counts);

b. For punitive damages in an amount to be determined at trial (Counts II and III);

c. For an award of pre-judgment and post-judgment interest to the extent permitted by applicable law;

d. For an award of injunctive relief (Counts IV and V);

e. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by applicable law; and

f. For such other and further relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATE: June 6, 2018                     Respectfully submitted,

                                   /s/ Patrick F. Madden
Patrick F. Madden, PA ID# 309991
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
pmadden@bm.net

James C. Orr, Jr. (*pro hac vice* forthcoming)
**HEYGOOD, ORR & PEARSON**
2331 W. Northwest Hwy, 2nd Floor
Dallas, Texas 75220
Tel: (214) 237-9001
Fax: (214) 237-9002
jim@hop-law.com

**ATTORNEYS FOR PLAINTIFFS CONESTOGA TRUST AND CONESTOGA TRUST SERVICES, LLC**